**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 25, 2014**

# In the Court of Appeals of Georgia

A13A2270. REED et al. v. CAROLINA CASUALTY INSURANCE COMPANY et al.

BRANCH, Judge.

Georgia law provides that a tort plaintiff "shall not be entitled to receive any damages if the plaintiff is 50 percent or more responsible for the injury or damages claimed." OCGA § 51-12-33 (g). In this wrongful death action, the trial court granted summary judgment in favor of the defendants on the ground that the undisputed facts show the plaintiff's decedent was at least 50 percent responsible for his own death. The plaintiff contends the trial court erred by not allowing the jury to consider this issue. We agree and therefore reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We

review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003). And "questions of negligence, diligence, contributory negligence and proximate cause are peculiarly matters for the jury, and a court should not take the place of the jury in solving them, except in plain and undisputable cases." (Citation omitted.) *Bussey v. Dawson*, 224 Ga. 191, 193-194 (160 SE2d 834) (1968). See also *Sutton v. Justiss*, 290 Ga. App. 565, 566 (659 SE2d 903) (2008) ("If reasonable minds can differ on the cause of the injury, the case is not plain, palpable, and indisputable and it should go to the jury") (citation omitted).

The parties rely in large part on the same documents that were produced by officials involved in the response to and investigation of the accident. Construed in favor of the plaintiff, these records show that at approximately 2:00 a.m. on August 26, 2008, Rimantas Labeika parked a tractor-trailer[1] alongside a metal guardrail in the right side emergency lane on Interstate 285 westbound just past the entrance ramp to that highway from Interstate 75 South. Labeika parked because he was tired and

---

[1] DSG Business Corporation owns the tractor; LMV Trucking, Inc., owns the trailer; and Carolina Casualty Insurance Company insures LMV.

2

because he had driven the maximum number of hours allowed by applicable regulations. He proceeded to go to sleep in the sleeper berth of his tractor. About one hour later, Thomas M. Reed, II, accompanied by his friend Charles Shelton, was driving a Ford Explorer southbound on Interstate 75 approaching the intersection with Interstate 285 in wet and rainy conditions. Sometime earlier, Reed had been drinking alcohol, and he had a blood alcohol content of .095 as determined by a postmortem examination.

Reed entered the right hand curve to transition onto Interstate 285 westbound at a rate of speed too fast for the curve and rainy conditions. Reed lost control of the vehicle and turned his wheel to the right, and the vehicle rotated in a clockwise direction and traveled onto the northern shoulder of the interstate, striking the "guardrail that borders the northern edge of the shoulder." The vehicle "continued in a westerly direction and disengaged from the guardrail driver side down. The [vehicle] collided undercarriage first with the rear of [Labeika's parked tractor-trailer]." "The impact . . . caused a rupture of the gas tank and a fire ensued." The fire "consumed the Explorer"; Reed and Shelter were pronounced dead at the scene. A postmortem examination concluded that the cause of death for Reed was "Sequelae of Blunt Force

3

Trauma and Thermal Injuries."[2] Labeika was cited for improper parking in a prohibited area. In connection with the citation, Labeika later forfeited his bond.

Thomas M. Reed, Sr., as a surviving parent and as the administrator of his son's estate, and Aundrea C. Reed, as a surviving parent, filed this wrongful death action to recover damages from the defendants, asserting that there would have been no fire and their son would not have died but for the presence of the illegally parked tractor-trailer. In response to the defendants' joint motion for summary judgment and following a hearing, the trial court granted summary judgment in favor of the defendants. The trial court concluded from the facts that it was plain and palpable that Reed's own negligence was equal to or greater than that of the defendant, thereby barring recovery for his injuries and death, and that "reasonable minds could not differ as to this conclusion."

1. The appellants first contend that the trial court did not have the authority to grant summary judgment because OCGA § 51-12-33 provides that, under the present circumstances, damages shall be apportioned by the "trier of fact." That Code section provides:

---

[2] "Sequelae" has been defined as a "condition following as a consequence of a disease," Stedman's Medical Dictionary, 27th ed., p. 1622 (2000), or as "an aftereffect of disease, condition, or injury" or "a secondary result." Merriam-Webster.com.

Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

OCGA § 51-12-33 (a). But we find nothing in the statute that abrogates a trial court's authority under OCGA § 9-11-56 to grant summary judgment in an appropriate case, i.e., in a plain and indisputable case. See generally *Garrett v. NationsBank, N.A. (South)*, 228 Ga. App. 114, 119 (491 SE2d 158) (1997) (summary judgment granted on the ground that the clear and palpable evidence showed that the sole proximate cause of plaintiff's injury was her own contributory negligence; decided prior to 2005 amendments to OCGA § 51-12-33). See also *Couch v. Red Roof Inns*, 291 Ga. 359, 365 (1) (729 SE2d 378) (2012) (in 2005, the legislature wrote the common-law rule regarding a plaintiff's contributory negligence into OCGA § 51-12-33 (g)).

2. The appellants also contend that the trial court erred by concluding as a matter of law or undisputed fact that Reed was 50 percent or more responsible for his own death.

As to the truck driver Labeika, the generally applicable law requires that "[t]o recover damages in a tort action, a plaintiff must prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of the injury." *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990). "With respect to factual causation . . . , we have held that the defendant's conduct is not a cause of the event, if the event would have occurred without it." (Citations and punctuation omitted.) *Ogletree v. Navistar Intl. Transp. Corp.*, 245 Ga. App. 1, 3 (1) (535 SE2d 545) (2000). And proximate cause is

> that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred. What amounts to proximate cause is undeniably a jury question and is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy, and precedent.

(Citation and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500 (578 SE2d 862) (2003). "The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery." *Delta Airlines v. Townsend*, 279 Ga. 511, 515 (1) (614 SE2d

6

745) (2005). With regard to the intervening act of the plaintiff's own negligence, "[the] causal connection between an original act of negligence and injury to another is *not* broken by the 'intervening' act of a third person, if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrongdoer." (Citation and punctuation omitted; emphasis supplied.) *Wade v. Polytech Indus.*, 202 Ga. App. 18, 22 (3) (413 SE2d 468) (1991), quoting *Williams v. Grier*, 196 Ga. 327, 328 (2) (a) (26 SE2d 698) (1943). "And the risk created by the defendant may include the intervention of the foreseeable negligence of others." (Citation omitted.) *Wade*, 202 Ga. App. at 23 (3) (trial court erred in directing judgment to defendant even though plaintiff's own negligence may have intervened to cause plane crash where "genuine issues of material fact exist[ed] from which a jury could find that [plaintiff's] failure reasonably could have been anticipated and foreseen") (citations omitted.).

In the present case, there is an issue of fact as to whether Labeika's act of parking in the emergency lane was a cause in fact of Reed's death. Construed in favor of the appellants, the record shows that the fire was caused when the undercarriage of Reed's vehicle struck the trailer and that Reed died from some combination of blunt

7

force trauma and the fire.[3] What the record does not show is whether Reed would have died if Labeika's tractor-trailer had not been parked in the emergency lane that night. Thus, there is an issue of fact as to whether Reed would have died but for the presence of Labeika's tractor-trailer illegally parked in the emergency lane.

With regard to proximate cause, the record shows that both Reed and Labeika violated traffic laws. Reed was driving with a blood-alcohol level above the legal limit, OCGA § 40-6-391 (a) (5)[4]; was driving too fast for the conditions, OCGA § 40-

---

[3] The appellees complain that the appellants failed to present expert testimony to show that Reed did not die as a result of his collision with the guardrail. But the plaintiff introduced a report from the Cobb County Police Department to show that the fire was caused when the underside of Reed's vehicle struck the trailer, as well as a report of the Cobb County Medical Examiner opining that the cause of death resulted, in part, from thermal injuries, i.e., the fire. And the appellees did not object to this evidence in the trial court.

[4] OCGA § 40-6-391 (a) (5) provides as follows:
A person shall not drive or be in actual physical control of any moving vehicle while: . . . The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended.

6-180[5]; and failed to maintain his lane of travel, OCGA § 40-6-48.[6] Meanwhile, Labeika had parked in violation of OCGA § 40-6-203, which provides that, with certain exceptions not applicable here, "no person shall. . . [s]top, stand, or park a vehicle. . . [o]n any controlled-access highway." OCGA § 40-6-203 (a) (1) (I). See also OCGA § 40-6-50 (b) ("no vehicle shall be driven in an emergency lane except in the event of an actual emergency" except for transit buses under specified circumstances). There remain, therefore, at a minimum, questions of material fact as to each party's negligence in connection with the collision and the degree to which

---

[5] OCGA § 40-6-180 provides as follows:
No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. Consistently with the foregoing, every person shall drive at a reasonable and prudent speed when approaching and crossing an intersection or railroad grade crossing, when approaching and going around a curve, when approaching and traversing a hill crest, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

[6] OCGA § 40-6-48 (1) provides as follows:
A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety[.]

9

each party was at fault for the decedent's injuries and death. The remaining issue, therefore, is whether it is plain and indisputable that Reed was 50 percent or more responsible for his own death. See OCGA § 51-12-33 (g); *Bussey*, 224 Ga. at 193-194.

Prior to the addition of OCGA § 51-12-33 (g)[7], this Court addressed a case with similar facts. In *Storer Communications v. Burns*, 195 Ga. App. 230 (393 SE2d 92) (1990) (whole court), the plaintiff's wife died "after she lost control of her vehicle and then struck another vehicle that was parked in the emergency lane of an interstate highway." The evidence showed that a reporter had been sent to report on a four-car collision on an interstate highway and that he "parked in the emergency lane, turned on his emergency blinkers, and exited his vehicle." Id. The plaintiff's wife, who was approaching the scene, moved her car from the center to the left lane but lost control and veered into the left-hand guardrail, bounced back across the interstate, struck the reporter's truck, and went off into a ravine. Id. The defendants argued that their motion for summary judgment should have been granted "because any negligence in parking the vehicle in the emergency lane ha[d] been eliminated as a proximate cause

---

[7] See Ga. L. 2005, §12. The addition of OCGA § 51-12-33 (g) did not represent a change in the law regarding contributory negligence. As explained above, the legislature wrote the existing common-law rule regarding a plaintiff's contributory negligence into OCGA § 51-12-33 (g). *Couch*, 291 Ga. at 365.

10

of the collision and also because [the plaintiff's] recovery [was] barred by the contributory negligence of his deceased." Id.

This Court explained that with regard to the foreseeability of injury resulting from illegally parking in the emergency lane,

> it is not necessary that [the defendant] should have been able to anticipate the particular consequences which ensued. It is sufficient, if in ordinary prudence he might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might result.

(Citation and punctuation omitted.) Id. at 231-232. Cf. *Smith v. Commercial Transp.*, 220 Ga. App. 866, 867 (1) (470 SE2d 446) (1996) ("[A]s a general matter, it would be difficult to state that the possibility of subsequent collisions following an initial accident blocking the road is absolutely not foreseeable.") (footnote omitted). The Court held that the question whether the plaintiff's recovery should be barred by his wife's own contributory negligence, including a complete bar if her own negligence constituted 50 percent or more of the total negligence, was an issue of fact. *Storer*, 195 Ga. App. at 232. The Court concluded that "these questions do not have 'plain and indisputable' answers under the evidence of record and must be resolved by a jury." Id. Compare *Reid v. Midwest Transp.*, 270 Ga. App. 557, 561 (2) (607 SE2d 170)

(2004) (under law providing relief from civil liability for those who render emergency assistance at the scene of an accident, defendant truck driver who parked in emergency lane to assist accident victims was not liable to passengers in vehicle that collided with his truck).

Although the facts of the present case show more fault on Reed's part than the decedent in *Storer*, we conclude that there are issues of fact relative to the degree to which Reed's and Labeika's negligence caused Reed's death, including whether Reed was 50 percent or more at fault. It is reasonably foreseeable that another motorist might negligently lose control of his vehicle at night in wet conditions and strike a tractor-trailer parked in the emergency lane on an interstate highway and that striking a tractor-trailer possibly might cause a fire thereby exacerbating the injuries resulting from such an event. As explained in *Storer*, it is not necessary that Labeika should have anticipated the particular manner in which Reed lost control of his vehicle, collided with the guardrail, and struck the tractor-trailer with the undercarriage of the Ford Explorer causing a fire and, possibly, Reed's death. And as in *Storer*, "these questions do not have 'plain and indisputable' answers under the evidence of record and must be resolved by a jury." Id. See generally *Dickerson v. Guest Svcs. Co. of Virginia*, 282 Ga. 771-772 (653 SE2d 699) (2007) ("the negligence of the defendant

12

and the plaintiff, and the plaintiff's lack of ordinary care for personal safety[,] are generally not susceptible of summary adjudication") (citation omitted).

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*

13

ON MOTION FOR RECONSIDERATION

The appellees contend we failed to analyze two issues. First, the appellees contend that we failed to properly analyze the issue of "comparative negligence," i.e., whether it was plain and palpable that Reed was at least 50 % or more responsible for his own injuries thereby barring his recovery under OCGA § 51-12-33. Given that the original opinion has specific holdings addressing this issue, this argument is without merit.

Second, the appellees contend that we failed to analyze whether Reed failed to exercise ordinary care for his own safety and failed to avoid Labeika's negligence by exercising ordinary care. The appellees argue that Reed failed to do so as a matter of law and that we should therefore affirm the trial court under the "right for any reason" rule. See *Georgia–Pacific, LLC v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) ("[a] grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, *so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond*) (citation and punctuation omitted; emphasis in original).

Under the doctrine of avoidable consequences, "[i]f the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, [the plaintiff] is not entitled to recover." OCGA § 51-11-7. The defendant has the burden of proving that the plaintiff by ordinary care could have

avoided the consequences caused by the defendant's negligence. *Garrett v. NationsBank*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997). The appellees argue that the doctrine of avoidable consequences entitles them to summary judgment because Reed could have avoided the illegally parked tractor-trailer. There is no evidence, however that Reed was or should have been aware of the fact that a tractor-trailer was illegally parked in the emergency lane of an interstate entrance ramp such that he could have avoided the consequences of the truck driver's decision to camp overnight in that spot. Accordingly, this argument does not provide grounds for summary judgment. See *McCray v. FedEx Ground Package System*, 291 Ga. App. 317, 322 (1) (661 S.E.2d 691) (2008) (except in "palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached," the question of whether the doctrine of avoidable consequences should bar the plaintiff's recovery is for the jury); *Lowery's Tavern v. Dudukovich*, 234 Ga. App. 687, 690 (3) (507 SE2d 851) (1998) (the question of whether the plaintiff exercised due care for his own safety "is ordinarily reserved for the jury," and "it may be summarily adjudicated [only] where [the plaintiff's] knowledge of the risk is clear and palpable").

With regard to the argument that the appellants cannot recover because Reed failed to exercise due care for his own safety by drinking and driving too fast for

conditions, which caused him to lose control of his vehicle, Georgia law holds that "[e]ven if a defendant is negligent, a determination that a plaintiff assumed the risk or failed to exercise ordinary care for her own safety bars recovery for the resulting injury suffered by the plaintiff, unless the injury was wilfully and wantonly inflicted." *City of Winder*, 265 Ga. 723, 724 (2) (462 SE2d 704) (1995). Here, however, there is no evidence that Reed was aware of the parked tractor-trailer and therefore could not have assumed the risk. And although he may have failed to exercise ordinary care in a manner that led to his losing control of his vehicle, whether that failure, without more, would have caused his death is still a question of fact. As shown in the original opinion, Reed's death was caused by a combination of blunt force trauma and thermal injuries, meaning that there is some possibility that Reed would not have died but for the presence of the illegally parked tractor-trailer. Accordingly, this argument is without merit.