Barnes, Presiding Judge, dissenting.
Because I believe that there remains a genuine issue of material fact as to whether the improperly installed smoke alarm's failure to alert Yearty to the presence of smoke resulted in her injury, I must respectfully dissent to the majority opinion holding otherwise.
One who undertakes, ... for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if: (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.
Section 323 of the Restatement (Second) of Torts. And, "[d]amages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered." OCGA § 51-12-9. See Collie v. Hutson , 175 Ga.App. 672, 673 (3), 334 S.E.2d 13 (1985). Although the majority and Holder Enterprises contend that Yearty was not injured by a breach related to whether the smoke detector functioned properly but by Yearty's voluntary choice to confront the fire, "[t]he purpose of a smoke detector is to provide an early warning of fire and to reduce the damages and injury resulting therefrom." Housing Authority of City of Atlanta v. Jefferson , 223 Ga.App. 60, 62 (2), 476 S.E.2d 831 (1996). In this case, the smoke alarm did not do that for which it was intended, and, in fact, would never have alerted Yearty to the presence of smoke because there was evidence that, despite Holder Enterprises's assurances otherwise, it was *823 improperly installed. Given this, and the evidence that Yearty's response to the grease fire was related to her inability to see because of the presence of copious amounts of grease smoke, "[h]ad a smoke detector been [working] to provide an early alarm, it is possible that [Yearty] would have been [alerted before the smoke impeded her vision], thereby avoiding or lessening the extent of [her] injuries." Housing Authority of City of Atlanta, 223 Ga.App. at 62 (2), 476 S.E.2d 831. See Newsome v. LinkAmerica Express , 336 Ga.App. 800, 802-803, 786 S.E.2d 692 (2016) (where, while temporarily blinded by the sun, a motorist drove into a tractor alleged to be illegally parked on the street, it was an issue for the jury whether the driver was barred from recovery by contributory negligence).
A smoke alarm is intended to warn us of the presence of smoke. Our common experience tells us that people do not merely run at the presence of smoke but rather ascertain whether there is a fire and attempt to mitigate ensuing harm by perhaps attempting to ensure the safe escape of loved ones or to protect the home or valued or irreplaceable possessions. This Court should decline to decide the folly or wisdom of such actions unless reasonable minds cannot differ as to the conclusions to be reached. See Villanueva v. First American Title Ins. Co. , 313 Ga.App. 164, 721 S.E.2d 150 (2011) (summary judgment as to causation appropriate only when "reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of 'foreseeability') to the facts") (citation and punctuation omitted). Thus, "other than in plain, palpable, and undisputed cases, questions of negligence [and] proximate cause, including the related issue[ ] of ... lack of ordinary care in avoiding the consequences of another's negligence, ... are for the jury." (Punctuation and footnote omitted.) McCray v. FedEx Ground Package System , 291 Ga.App. 317, 322 (1), 661 S.E.2d 691 (2008).
For these reasons, I must respectfully dissent.